# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM S. RITTER, JR., | : | No. 3:15cv1235 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JOHN TUTTLE, et al., | : | |
| Respondents | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is a report and recommendation (hereinafter "R&R") filed by Magistrate Judge Martin C. Carlson. The R&R suggests the denial of William S. Ritter, Jr.'s petition for a writ of habeas corpus, and the denial of a certificate of appealability. Ritter (hereinafter "petitioner") has filed objections to the R&R, and the matter is ripe for disposition.

## **Background**

The Court of Common Pleas of Monroe County convicted petitioner in 2011 of various offenses relating to an attempted sexual exploitation over the internet of a person he believed to be a fifteen-year-old girl.

The Pennsylvania Superior Court summarized the factual background of this case as follows:

> On February 7, 2009, Detective Ryan Venneman of the Barrett Township Police Department was conducting undercover operations investigating the crime of internet sexual exploitation of children in a Yahoo Instant

Messenger chat room. Detective Venneman was acting as a young female named "Emily" when he was contacted online by Ritter, posing as "delmarm4fun," a 44–year–old male from Albany, New York. At the onset of the online chat, "Emily" specifically identified herself to Ritter as a 15–year–old female from the Poconos.

The online conversation was sexual in nature. During the conversation, Ritter provided "Emily" with a link to his webcam, asking her to share photographs with him. Ritter was particularly interested in whether "Emily's" ex-boyfriend took "any traditional ex pics" of her, by which he meant nude or provocative photographs. In response to Ritter's repeated requests to send additional photos, "Emily" transmitted a photograph to which Ritter replied, "that'l [sic] get a reaction." Ritter then stated that he was "waiting for ["Emily"] to put up another pic so [he] can continue to "react."' The webcam was operational at the time and displayed a man's face and upper body area. When queried as to what he meant by "react," Ritter responded that he reacted "below the screen," "where [his] hands are," indicating his hands are "down lower." Ritter then communicated to "Emily" that he was having a "big reaction here" and asked "Emily" if she would like to see more. Ritter then adjusted the webcam to focus on his genital area where he exposed himself to "Emily" and proceeded to masturbate.

Ritter turned off the webcam for a period of time. He, however, continued to engage in sexually explicit communications with "Emily," including asking her if she tasted her ex-boyfriend's penis, her favorite sexual position, if her ex-boyfriend ejaculated inside her, if he used a condom, and if she performed oral sex on him. "Emily" cautioned Ritter that she was only 15 years old and she did not want them to get in trouble because of their respective ages. Unfazed by "Emily's" age, Ritter asked "Emily," "you want to see it finish?" Ritter then turned on the webcam and ejaculated in front of the camera for "Emily." Detective Venneman then notified

Ritter of his undercover status and the undercover operation and directed Ritter to call the police station.

Ritter was subsequently charged with unlawful contact with a minor (sexual offenses), 18 Pa.Cons.Stat.Ann. § 6318(a)(1), unlawful contact with a minor (open lewdness), 18 Pa.Cons.Stat.Ann . § 6318(a)(2), unlawful contact with a minor (obscene and other sexual materials and performances), 18 Pa.Cons.Stat.Ann. § 6318(a)(4), corruption of minors, 18 Pa.Cons.Stat.Ann. § 6301(a)(1), criminal use of a communications facility, 18 Pa.Cons.Stat.Ann. § 7512(a), and indecent exposure, 18 Pa.Cons .Stat.Ann. § 3127.

Prior to trial, the Commonwealth uncovered information, via a Google search, of Ritter's prior arrests from online sex sting operations in New York. The public internet search yielded news articles reporting that, in April 2011, Ritter communicated online in a chat room with an undercover police officer posing as a 14–year–old female and arranged to meet the "girl" at a local business in Albany. Ritter arrived at the designated location and was questioned by the authorities; however, he was released without any charges being filed. Two months later, Ritter was again caught in the same kind of sex sting after he tried to lure what he thought was a 16–year–old female to a fast food restaurant. Ritter was subsequently charged, but the Albany District Attorney placed the case on hold.

Upon discovery of the publicly available articles regarding Ritter's prior engagement in internet sex stings, the Commonwealth requested and later received copies of those records from the Albany County District Attorney's Office. The Commonwealth provided Ritter with copies of the records in compliance with Pa.R.Crim.P. 573. Unbeknownst to the Commonwealth, the New York state records were sealed at the time they were forwarded to the Commonwealth, prompting the Commonwealth to return the records to the Albany County District Attorney's

> Office. A petition to unseal the records was subsequently filed and granted by the trial court in Albany County[1].
>
> Thereafter, the Commonwealth filed a notice of prior bad acts as well as a motion *in limine* seeking to introduce the New York arrest records at trial. In response thereto, Ritter filed a motion for dismissal/change of venue as well as a motion *in limine* seeking to preclude this evidence. The trial court held a hearing on the motions. At the hearing, the Commonwealth's exhibits, consisting in part of the New York arrest records, were admitted under seal. After the hearing, the trial court entered an order and accompanying opinion granting the Commonwealth's motion *in limine,* permitting evidence of Ritter's prior bad acts in New York to be admitted at trial.
>
> Following a jury trial, Ritter was found guilty of all but one count. Prior to sentencing, the Supreme Court of the State of New York, Appellate Division reversed and vacated the order of the Albany County court unsealing Ritter's records. Ritter then filed a motion for a new trial pursuant to Rule 704(B) or in the alternative to postpone sentencing. The trial court sentenced Ritter on October 26, 2011. At the time of sentencing Ritter made an oral motion for extraordinary relief. After extensive argument regarding the New York records, the trial court denied Ritter's request for a new trial and sentenced Ritter to an aggregate period of 18 to 66 months' imprisonment.

Commonwealth of Pennsylvania v. Ritter, No. 975 EDA 2012, 2013 WL 11250812 *1-2 (Pa. Super. Ct. Nov. 6, 2013).

He appealed the case to the Pennsylvania Superior Court, which affirmed his conviction on November 6, 2013. Id. Petitioner appealed to the Pennsylvania Supreme Court, which denied the appeal on May 21, 2014.

Commonwealth of Pennsylvania v. Ritter, 625 Pa. 658 (May 21, 2014). The instant petition followed on April 20, 2015.

Petitioner, however, filed this case prematurely, before exhausting his state court remedies. Specifically, he had not filed a motion under Pennsylvania's Post Conviction Relief Act. See 42 PA. CONS. STAT. ANN. § 9501 et seq. We stayed his petition to allow him time to exhaust the state court procedures. He filed a motion for post conviction relief in state court. The Court of Common Pleas denied the petition on October 6, 2016, the Pennsylvania Superior Court denied it on September 12, 2017, and the Pennsylvania Supreme Court denied it on May 21, 2017. Thus, we lifted the stay on December 6, 2017. (Doc. 40).

The instant petition asserts that the trial court violated petitioner's federal constitutional rights by admitting at trial evidence of the two New York arrests. The parties briefed their respective positions and Magistrate Judge Carlson issued an R&R. Petitioner filed objections to the R&R, bringing the case to its present posture.

**Standard of review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

5

The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

As noted above, this case involves a petition for habeas corpus relief filed pursuant to 42 U.S.C. § 2254 (hereinafter "section 2254"). We may grant a petitioner's section 2254 habeas corpus petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254.

**Discussion**

As set forth in the various opinions issued by the state courts, before the prosecution at issue, the petitioner had been arrested twice on similar charges involving internet sex sting investigations.[1] These arrests, however, took place in New York state not Pennsylvania. The Pennsylvania authorities became aware of these arrests through an internet "Google" search of the petitioner. Commonwealth v. Ritter, No. 975 EDA 2012, 2013 WL 11250812 *1-2 (Pa. Super. Ct. Nov. 6, 2013). The Commonwealth of Pennsylvania requested from New York state the records of these arrests. New York provided the records, but

---

[1] It unclear if both of these incidents led to formal arrests. For convenience, and as it doesn't affect our analysis, we will refer to both of these previous encounters with law enforcement as "arrests".

6

Pennsylvania officials later learned that the records were sealed. Id. Accordingly, they returned the records and filed a motion to unseal them. The trial court in New York granted the motion to unseal the records. Id.

The Commonwealth then filed a motion *in limine* to admit this evidence as "evidence of prior bad acts" into the trial. Id. The court granted the motion, and the evidence was indeed admitted at trial. After the trial, but before sentencing, the New York Appellate Court reversed the trial court and found that the records should not be unsealed. Id. Evidently, the court ordered the records re-sealed.

Because the records were eventually ordered re-sealed, albeit after the trial, the petitioner argues that they should not have been used during his trial, or in any post-trial proceeding, and a new trial should be held. The Pennsylvania courts have consistently denied this claim. Now, petitioner makes this issue the basis for his habeas corpus petition.

As noted above, we may only grant relief to the petitioner under section 2254 if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254.[2]

The petitioner argues that the state court's actions in admitting the New York state records violates the Full Faith and Credit Clause of the United States Constitution. ART. IV, SECTION 1, UNITED STATES CONSTITUTION. This clause

---

[2] Apparently, petitioner is no longer in custody.

requires that each state recognize the laws, judicial decisions, and public records of other states.  Specifically, the Constitution provides in pertinent part:  "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state."  Id.

Here, petitioner argues that Pennsylvania failed to provide full faith and credit to New York's determination that the records at issue should be sealed.   In failing to provide full faith and credit, petitioner argues that they also denied him due process of the law guaranteed by the Fourteenth Amendment to the Constitution.  We disagree.

Petitioner's argument fails for several reasons.  First, at the time of the trial, the records were unsealed.  Thus, the state trial court did provide full faith and credit to New York's judicial determinations at the time. It was only after the trial and verdict, when the Pennsylvania record already contained information on the New York arrests, that New York state court re-sealed the records.

Then the question becomes whether a new trial was necessary once the appellate court in New York ruled that the records should be sealed.  We conclude that a new trial was unnecessary.   The petitioner points to no relevant case law which supports his position, and our research has  uncovered none.

Further, the information at issue, was publicly available even when the records were officially sealed by New York state.  In fact, the prosecutors were

8

only put on notice of the arrests due to a "Google" search. Even today an internet search reveals newspaper articles which discuss the petitioner's New York state arrests.[3] The Wikipedia entry on the petitioner also discusses his New York state arrests.

https://en.wikipedia.org/wiki/Scott_Ritter#Arrests_and_conviction (last visited on December 13, 2018)

Additionally, it appears that admission of the evidence itself would not be a violation of federal law. In fact, the Federal Rules of Evidence allow for the admission of such evidence. See FED. R. EVID. 404(b) (providing that evidence of a crime, wrong or other act "may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.").

---

[3] Without any substantive analysis, the petitioner argues that such extrinsic evidence should not be considered by the court because at his trial it would have been inadmissible hearsay. Beyond noting the issue, the petitioner does not provide a full analysis of this issue. Thus, it is difficult for us to respond to his argument. Suffice it to say that even if the internet or newspaper articles are hearsay, many exceptions to the hearsay rule exist, and it is not unlikely that the evidence would have been admissible.
    Further, besides the articles, the prosecution could have potentially called to the stand the undercover investigators used in the previous stings to explain the investigations and how the petitioner had attempted inappropriate conduct with minor females over the internet. Thus, we are convinced that even if the records had been sealed at the time of the trial, the prosecution could have found a way to present the evidence of the prior arrests, or the facts surrounding them.

Moreover, even if the evidence should not have been admitted, petitioner has not been prejudiced. As the Superior Court noted other "overwhelming evidence of Ritter's guilt" was presented. Commonwealth v. Ritter, No. 975 EDA 2012, 2013 WL 11250812 *5 (Pa. Super. Ct. Nov. 6, 2013). The trial court reviewed some of this evidence in its opinion.

> The facts ascertained at trial established that Detective, purporting to be a 15-year-old minor female, engaged in conversations of a sexual nature with Defendant over the internet. Defendant displayed his penis over a web camera and began to masturbate so that Detective could witness. Defendant was advised several times that Detective was a '15-year-old female' yet continued to engage in the act of masturbation over the internet.

Commonwealth v. Ritter, No. 2238 Criminal 2009, Court of Common Pleas Monroe County Pa, attached to Commwealth v. Ritter, 2013 WL 11250812 (Pa. Super Ct. Nov. 6, 2013) at 16.

During the online chat, the undercover officer obtained the telephone number of the person with whom he was chatting. The detective called the number and the person he talked to indicated his name was William Scott Ritter Jr. of Delmar, New York. Id. at 6-7. Further investigation indicated that the telephone number itself it was a wireless number assigned to William Ritter of Delmar, New York. Id. at 7. The detective acquired several photographs of the petitioner and compared them with the web camera video obtained during the masturbation. Id. The detective determined that masturbator in the video matched petitioner's pictures. Id.

Thus, certainly overwhelming evidence, without evidence of the other arrests, supports the conclusion that the petitioner was the person who explicitly masturbated online to a person who purported to be a fifteen-year old female. These actions are the basis for all the crimes which the jury convicted the petitioner. Accordingly, even if the evidence was improperly admitted it was, as the Pennsylvania court stated, "harmless error" and the petitioner suffered no prejudice.[4]

For all of these reasons, we will overrule the petitioner's objections and deny his petition for a writ of habeas corpus. We also find that the petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, we will decline to issue a certificate of appealability. An appropriate order follows.

**Date: <u>December 14, 2018</u>**                               **BY THE COURT:**


                                                        **s/ James M. Munley**
                                                        **JUDGE JAMES M. MUNLEY**
                                                        **United States District Court**

---

[4] Petitioner also argues that the Pennsylvania courts and this court should not have access to the documents at issue because they are currently under seal in New York state. We find no merit to this argument. The records are part of the record of petitioner's state court case. Without an examination of the evidence, it would be impossible to provide a full analysis of the petitioner's claim.